COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Haley and Petty
Argued at Chesapeake, Virginia


ANGEL LUIS RODRIGUEZ, JR.

                                            MEMORANDUM OPINION[*] BY
v.        Record No. 2869-07-1              JUDGE ELIZABETH A. McCLANAHAN
                                            FEBRUARY 3, 2009
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                        H. Vincent Conway, Jr., Judge

            Charles E. Haden for appellant.

            Donald E. Jeffrey, III, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Angel Luis Rodriguez, Jr. appeals from his conviction for involuntary manslaughter in

violation of Code § 18.2-36.1(A).  He argues the trial court erred in finding the evidence

sufficient to support his conviction.  We affirm the trial court.

                                    I.  BACKGROUND

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).

That principle requires us to "'discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences that may be drawn therefrom.'"  Kelly v. Commonwealth, 41 Va. App. 250,

254, 584 S.E.2d 444, 446 (2003) (en banc) (quoting Watkins v. Commonwealth, 26 Va. App.

335, 348, 494 S.E.2d 859, 866 (1998)).  See also Bolden v. Commonwealth, 275 Va. 144,

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

147-48, 654 S.E.2d 584, 586 (2008); Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006); Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005); Walton v. Commonwealth, 255 Va. 422, 425-26, 497 S.E.2d 869, 871 (1998).

Rodriguez met Deborah Kuchta one evening while visiting several bars in Newport News. Kuchta rode on the back of Rodriguez's motorcycle to a couple of the bars and to another friend's residence. Rodriguez claimed that while driving his motorcycle north on Jefferson Avenue with Kuchta sitting on the back, he approached the intersection with Ed Wright Lane, when a vehicle came from his left, crossed all three southbound lanes, and made a left-hand turn directly in front of him before proceeding northbound on Jefferson Avenue.[1] According to Rodriguez, he hit his brakes and tried to stop, released his brakes when the rear brakes locked up, and ultimately hit a curb before going into a median ahead of him. Kuchta was thrown off the motorcycle when Rodriguez hit the curb. She later died from the injuries she sustained in the accident.

An officer investigating the accident testified that Rodriguez appeared to have been drinking, had bloodshot eyes, slurred speech, and a strong odor of alcohol. Rodriguez performed poorly on field sobriety tests although he was not "falling down" drunk, was oriented, and was able to answer the officer's questions. Rodriguez claimed he had three or four beers[2] and then three

---

[1] A detective with the police department testified that there is a road sign prohibiting left turns from Ed Wright Lane onto Jefferson Avenue and if a car had come from Ed Wright Lane and turned left onto Jefferson Avenue as Rodriguez maintained, that action would have been illegal.

The police found a straight skid mark in the left-hand turning lane of Jefferson Avenue that was fifty-four feet, eight inches long. The skid mark stopped six feet, eight inches, in front of the curb. It appeared to the police from the skid mark that the motorcycle was in the left turn lane (not the far left northbound lane) going straight. Rodriguez, however, claimed he was in the left-most northbound lane but then swerved into the left turn lane when the unidentified vehicle turned in front of him.

[2] He also told an investigator he had "three 100s."

glasses of water before he started driving so that he would "sober up." He had a .13% blood alcohol reading on the breath test administered by police after the accident.

A toxicologist at trial testified that at a blood alcohol level of as low as .05 %, all of the major bodily components needed to safely operate a motor vehicle are impaired including one's judgment, reaction time, ability to pay proper attention to street signs and traffic lights, as well as keeping a vehicle in its lane in relation to other vehicles. As blood alcohol increases to .10%, vision is impaired such that it takes the driver's eyes longer to adjust to glare and lights from other vehicles. The toxicologist also testified that while the visible effects of alcohol, such as slurring and stumbling may not be present in someone with a high tolerance for alcohol, the effects that are not visible but impair functions needed to safely operate a motor vehicle, such as inability to pay attention and exercise judgment, would still be present even in someone with a high tolerance for alcohol. And at the level of .13%, Rodriguez's ability to pay attention, his vision, his judgment, and his decision-making would have been adversely affected.

Rodriguez told the police he believed the victim was experienced as a bike rider because she rode like someone who had ridden before, she leaned with him, and did turn signals even before he could put his hands out. Although Rodriguez initially told police he believed the victim came off his bike when he hit the curb, he later stated she would not have fallen off if she had held on to him. The autopsy of the victim revealed her blood alcohol content to be .23 %.

## II. ANALYSIS

Rodriguez contends the evidence was insufficient to convict him of involuntary manslaughter because "Kuchta's death was caused by two independent, intervening acts, namely, the act of the car turning illegally in front of Rodriguez and Kuchta's act of failing to hold on properly due to her intoxication."

On appeal, when considering a challenge to the sufficiency of the evidence, "we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Stated otherwise, a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original; citation and internal quotation marks omitted). Rather, "the relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. Furthermore, "[t]his Court does not substitute its judgment for that of the trier of fact." Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999) (citing Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992)).

The trial court found Rodriguez guilty of violating Code § 18.2-36.1(A) which provides: "Any person who, as a result of driving under the influence . . . unintentionally causes the death of another person, shall be guilty of involuntary manslaughter." As we have stated, "[t]he phrase, 'as a result of driving under the influence . . . causes the death,' Code § 18.2-36.1(A), requires proof of a causal connection between the driver's intoxication and the death of another person." Pollard v. Commonwealth, 20 Va. App. 94, 99, 455 S.E.2d 283, 286 (1983). In finding that Rodriguez's intoxication caused Kuchta's death, the trial court stated:

> The reason the accident happened is a person was operating a
> bike and shouldn't have been under a condition in which no
> one should be operating a bike, and either because a car
> pulled out and therefore his poor judgment came into play or

> the car didn't pull out and his poor judgment came into play,
> he hit a median and a person lost their life.

Rodriguez argues the act of the unidentified vehicle turning in front of Rodriguez was an independent and intervening act that absolves him from liability for Kuchta's death.[3] The Commonwealth contends Rodriguez created the existence of a "phantom" vehicle but the trial court made no express finding regarding the existence of the other vehicle. When conflicting inferences flow from the facts, we "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326; see also Harper v. Commonwealth, 49 Va. App. 517, 523, 642 S.E.2d 779, 782 (2007). Therefore, we presume the trial court resolved the conflict about the existence of another vehicle in the Commonwealth's favor and defer to that resolution.

Rodriguez also argues "Kuchta's act of failing to hold on properly due to intoxication" caused her death. But, the evidence proved Rodriguez was driving his motorcycle while intoxicated with an intoxicated passenger, Kuchta, sitting on the back. While traveling northbound on Jefferson Avenue, Rodriguez suddenly and inexplicably slammed on his brakes in a left turning lane. His brakes locked up leaving a fifty-four-foot, eight-inch skid mark and, after releasing the brakes, he proceeded six feet, eight inches further before hitting the curb of a median thereby knocking Kuchta off the motorcycle. It was reasonable for the trial court to infer Rodriguez's reaction time was too impaired to avoid the median.

> All of the authorities agree that contributory negligence has no place in a case of involuntary manslaughter [and] if the criminal negligence of the [accused] is found to be the cause of the death, [he] is criminally responsible, whether the decedent's failure to use due

---

[3] "[T]he conduct of another party plays no part in [an involuntary manslaughter] case, unless that conduct is proven to be an independent, intervening cause, rendering the defendant's negligence so remote it ceases to be a proximate cause of the accident." Stevens v. Commonwealth, 46 Va. App. 234, 251, 616 S.E.2d 754, 762 (2005) (*en banc*), aff'd, 272 Va. 481, 634 S.E.2d 305 (2006), cert. denied, 127 S. Ct. 2053 (2007).

> care contributed to the injury or not. Bell v. Commonwealth, 170
> Va. 597, 616, 195 S.E. 675, 683 (1938).

Hubbard v. Commonwealth, 243 Va. 1, 14, 413 S.E.2d 875, 882 (1992). From this evidence, the trial court could conclude that Rodriguez's intoxication, which in turn adversely affected his judgment, vision, ability to pay attention, reaction time, and other "bodily components needed to safely operate a motor vehicle," caused the accident and Kuchta's subsequent death.

Even if Kuchta's intoxication contributed to her inability to hold on when Rodriguez hit the curb, Rodriguez's conduct was not so remote as to cease to be a proximate cause of the accident and resulting death of Kuchta. See Stevens v. Commonwealth, 46 Va. App. 234, 251, 616 S.E.2d 754, 762 (2005) (*en banc*), aff'd, 272 Va. 481, 634 S.E.2d 305 (2006), cert. denied, 127 S. Ct. 2053 (2007). Furthermore, Kuchta's inability to hold on was a reasonably foreseeable consequence of the motorcycle hitting the curb. See Delawder v. Commonwealth, 214 Va. 55, 58, 196 S.E.2d 913, 915 (1973) ("An intervening act which is reasonably foreseeable cannot be relied upon as breaking the chain of causal connection between an original act of negligence and subsequent injury."). As such, Rodriguez did not prove that Kuchta caused her own death.

> Only if the conduct of the deceased amounts to an independent,
> intervening act alone causing the fatal injury can the accused be
> exonerated from liability for his or her criminal negligence. Mayo v.
> Commonwealth, 218 Va. 644, 647, 238 S.E.2d 831, 833 (1977). In
> such case, the conduct of the accused becomes a remote cause.
> Delawder v. Commonwealth, 214 Va. 55, 57, 196 S.E.2d 913, 915
> (1973).

Hubbard, 243 Va. at 14, 413 S.E.2d at 882.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.