Present:  All the Justices

MONI HENDERSON

v.  Record No. 180772

STEPHANIE P. COOK, TRUSTEE AND
CONSERVATOR FOR THOMAS E. NOOJIN

OPINION BY
JUSTICE CLEO E. POWELL
August 23, 2019

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Malfourd W. Trumbo, Judge

In this appeal, we consider the effect of altered assignments of error and whether a circuit

court can delegate its authority to approve or deny final accountings submitted by a trustee and

conservator to the Commissioner of Accounts.

## I.  BACKGROUND

In 2011, upon petition of Moni Henderson, Stephanie P. Cook ("Trustee") was appointed

Guardian and Conservator for Thomas E. Noojin, an incapacitated adult, and Trustee for the

Noojin Living Trust ("Trust").  Henderson is Thomas's daughter and one of the beneficiaries of

the Trust.  Her brother, Joseph E. Noojin, is the other Trust beneficiary.

During the administration of the trust and conservatorship, the Trustee filed regular

fiduciary accountings with the Commissioner of Accounts for Botetourt County

("Commissioner") and he approved accountings one through six.  Thomas died in 2015.  On

June 21, 2017, the Circuit Court of Botetourt County ("circuit court") entered an order providing

aid and guidance to the Trustee regarding the final administration of the Trust.  On December 18,

2017, the Trustee notified the beneficiaries and the circuit court that she intended to present the

"Seventh and Final Accounting" as Conservator for the Estate and the "Seventh and Final Accounting" as Trustee for the Trust (collectively, the "final accountings") to the circuit court and requested that the court dismiss the case from the docket. Judge Trumbo[1] heard the matter on December 27, 2017, and had heard all related matters up until this date. A court-reporter was not present for the December 27, 2017 hearing.

The circuit court issued an order on December 29, 2017 in which it summarized the Trustee's actions taken on behalf of the trust. The circuit court directed the Trustee to file the final accountings with the Commissioner after which "the approval of the Seventh and Final Accounting . . . by the Commissioner of Accounts for Botetourt County, Virginia, shall be an approval by this court and the beneficiaries, subject to specific written objections so provided . . . ." The order also directed that, upon the approval of the final accountings by the Commissioner, the trust would be closed and "this Order shall become final."

Henderson's written objections were attached to the December 29 order. Henderson objected to the procedure that the Trustee and the circuit court used because the final accountings bypassed the initial submission to and approval by the Commissioner before the circuit court ruled on the matter. There is no record demonstrating whether the circuit court considered Henderson's objections before issuing its December 29, 2017 order.

On February 20, 2018, Henderson filed similar objections with the Commissioner, including more detailed objections to the Trustee's fees. On March 20, 2018, the Commissioner issued his approval of the final accountings, noting "[h]owever, this Commissioner notes objections have been filed by Sidney Kirstein on behalf of Moni Henderson." Henderson filed "Exceptions and Objections" to the March 20, 2018 report by the Commissioner in the circuit

---

[1] Judge Trumbo retired at the end of 2017.

2

court on April 3, 2018. Henderson objected to the failure of the Commissioner to hold a hearing on the matter; to the award of legal fees and expenses to the Trustee; and to the Commissioner's authority to review the final accountings because the circuit court issued a final order on December 29. The record does not demonstrate that any further action was taken as to the final accountings by either the circuit court or the Commissioner.

On March 8, 2018, Henderson requested a hearing for certification of her Written Statement of Facts prepared in advance of her first appeal to this Court. There is no transcript of this hearing, however, the circuit court entered an order on April 3, 2018. In the order, the circuit court ruled that the December 29 order was not yet final, but would become so when the Commissioner filed the approval of the final accountings with the clerk of the circuit court. The circuit court notified the parties it reviewed both Henderson's written statement and Cook's proposed written statement, filed in advance of the hearing, and signed both documents. Judge Filson appended to the order copies of the signed written statements to which she had added handwritten notes stating "the Judge is unable to fully reconcile the statements of fact filed by opposing counsel. The parties were unable to agree in toto and the Judge who has heard this matter over the years is retired and unavailable to determine the issue."

This Court dismissed Henderson's first appeal without prejudice because the December 29 order was not a final, appealable order. Henderson appealed again on April 2, 2018 "from the final order, decision and ruling of the Botetourt County Circuit Court embodied in its order dated December 29, 2017 which states that it becomes 'final' by issuance of the order or report of the Commissioner of Accounts which was issued March 20, 2018."

On May 10, 2018, Henderson filed a revised statement of facts in preparation for a second appeal and requested a hearing on the matter. After a hearing, the circuit court issued an order pursuant to Rule 5:11(g), in which it incorporated the previously-filed written statements.

## II. ANALYSIS

### A. Assignments of Error

The Trustee argues that Henderson made substantive changes to Assignments of Error 1, 2, and 3[2] on brief and that the appeal should be dismissed. In response, Henderson asserts that the Court should address the merits of the case because the changes were non-substantive and meant to simplify and focus the errors.

The assignments of error contained in the granted Petition for Appeal were:

> 1. As a matter of law, the circuit court erred by accepting a direct submittal of the fiduciary's seventh and final accountings for the Noojin Living Trust and the Noojin estate and by delegating unto the commissioner of accounts the right to enter a final and unreviewable approval of the said accountings.
>
> 2. The circuit court erred by adopting a procedure for the review and approval of the said accountings which deprived the beneficiaries of the trust and the estate any meaningful opportunity and due process to review and challenge the fiduciary's billings set forth in said accountings.
>
> 3. The circuit court's procedural errors caused it to error [sic] substantively by awarding Ms. Cook legal fees for preforming [sic] non-legal administrative duties performed by Ms. Cook in her role as trustee and conservator.

The assignments of error contained in the opening brief are:

> 1. As a matter of law, the circuit court erred by accepting a direct submittal of the seventh and final accountings from the trustee and conservator without requiring that the final Noojin fiduciary

---

[2] Assignments of Error 4 and 5 are barred from review on appeal by Rule 5:27(d) because Henderson provides no argument on brief.

accountings be first submitted to and ruled upon by the commissioner of accounts.

2. As a matter of law, the circuit court then erred by approving and then referring the final accountings back to the commissioner via an order purporting to empower the commissioner of accounts, not the court, to issue a final, unreviewable order approving said accountings.

3. Finally, the circuit court's failure to require the trustee/conservator to submit her accountings to the customary statutory review procedures deprived the residuary beneficiaries of their due process rights to examine and challenge the propriety and amount of the legal and administrative fees sought by the fiduciary.

Once again, we find ourselves revisiting the issue of how to dispose of a case where the appellant has changed the assignments of error presented in the petition for appeal either in its brief or in its argument. The Court is perplexed as to why this issue continues to arise. As we have clearly stated on numerous occasions, "[i]t is improper for an appellant to change the wording of an assignment of error from that which was presented to the Court at the petition stage." *Allstate Ins. Co. v. Gauthier*, 273 Va. 416, 418 n.* (2007). *Accord Commonwealth v. Herring*, 288 Va. 59, 71 (2014) ("[O]nce this Court grants an assignment of error in a petition for appeal, no party may thereafter alter the substance of that assignment of error without the permission of this Court—be it in a brief or at oral argument."); *Northam v. Virginia State Bar*, 285 Va. 429, 434 n.* (2013) ("It is well established that the Court will not consider assignments of error as modified by an appellant's opening brief, but only as granted by the Court."); *White v. Commonwealth*, 267 Va. 96, 103 (2004) (citation omitted) ("It is impermissible for an appellant to change the wording of an assignment of error, 'especially when the assignment is set forth in the order of this Court awarding the appeal.'"); *Santen v. Tuthill*, 265 Va. 492, 497 n.4 (2003) ("[A]n appellant may not change the wording of an assignment of error."); *Cardinal Holding Co. v. Deal*, 258 Va. 623, 629 (1999) (citation omitted) ("'Appeals are awarded based on

5

assignments of error. Rule 5:17(c). The language of an assignment of error may not be changed.'"); *Black v. Eagle*, 248 Va. 48, 57 (1994) ("Appeals are awarded based on assignments of error and the language of the assignments may not be changed after the appeal is awarded."); *Hamilton Dev. Co. v. Broad Rock Club, Inc.*, 248 Va. 40, 44 (1994) ("Appeals are awarded based on assignments of error, a required part of every petition for appeal. Rule 5:17(c). The language of an assignment of error may not be changed, especially when the assignment is set forth in the order of this Court awarding the appeal.").

Indeed, Rule 5:17(c)(1)(i) provides that "[o]nly assignments of error assigned in the petition for appeal will be noticed by this Court." The reason for the Rule and the support for the Rule found in this long line of cases was recently articulated in *Forest Lakes Community Assoc., Inc. v. United Land Corp. of America*, 293 Va. 113, 122-123 (2017), where we said:

> An assignment of error is not a mere procedural hurdle an appellant must clear in order to proceed with the merits of an appeal. Assignments of error are the *core* of the appeal. With the assignment of error, an appellant should "lay his finger" on the alleged misjudgment of the court below. Martin P. Burks, Common Law and Statutory Pleading and Practice § 425, at 827 (T. Munford Boyd ed., 4th ed. 1952). . . . "An assignment of errors is in the nature of a pleading, and in the court of last resort it performs the same office as a declaration or complaint in a court of original jurisdiction." *Puckett v. Commonwealth*, 134 Va. 574, 579 (1922) (citation omitted). Like a well-crafted pleading, assignments of error set analytical boundaries for the arguments on appeal, provide a contextual backdrop for our ultimate ruling, and demark the stare decisis border between holdings and dicta.

Our case law could not be more clear: absent leave of Court, granted assignments of error should not be altered on appeal either on brief or at oral argument for any reason.

Despite the clarity of our rule, we continue to grapple with unapproved changes to granted assignments of error, causing us to have to decide how to deal with the fact that the litigant has not abided by our rule. In response to changes, our cases have held the following:

6

"'[w]hile it is improper for an appellant to alter the wording of a [granted] assignment of error . . . non-substantive changes to an assignment of error . . . do not default the issue raised.'" *Northam*, 285 Va. at 434 n.* (quoting *Dowdy v. Commonwealth*, 278 Va. 577, 590 n.14 (2009)). *Accord Escamilla v. Superintendent*, 290 Va. 374, 379 n.4 (2015); *Herring*, 288 Va. at 71-72. We have defined non-substantive alterations as those that "do not permit the appellant to argue a different issue on appeal." *Northam*, 285 Va. at 434 n.*. We do not, however, recognize any unauthorized substantive alteration to the granted assignment of error. *Herring*, 288 Va. at 72.

Our rulings have resulted in at least three approaches to the unauthorized alteration of an assignment of error. When the alteration is non-substantive, i.e. it does not permit the litigant to argue different issues on appeal, the Court may consider the modified assignments of error. In *Hudson v. Pillow*, 261 Va. 296 (2001), we addressed the merits of an assignment of error[3] because "the modification of [the] assignment of error ha[d] not enabled the plaintiffs to argue either a different question on appeal or an issue not presented to the chancellor." *Id*. at 301-02. We also refused to consider a different assignment of error[4] because on brief it was "entirely

---

[3] The assignment of error set forth in the granted petition for appeal was:

> The trial court erred in denying Appellants' Bill of Complaint for injunction relief seeking use of the Free Hollow road by holding that the Appellants did not meet their burden of proof regarding (a) abandonment by Appellants, (b) permissive use by Appellants or (c) adverse possession by the Appellees of Appellants' right of way.

*Hudson*, 261 Va. at 301 n.7. The related assignment of error, that the Court addressed the merits of on appeal, was set forth in the brief as: "The trial court erred in finding that the prescriptive easement over Free Hollow Road has been abandoned." *Id*.

[4] The assignment of error set forth in Hudson's granted petition for appeal was: "The trial court erred in finding that the Appellants did not establish a right of way by necessity or implication." *Hudson*, 261 Va. at 301 n.7. The related assignment of error, that the Court refused to address the merits of on appeal, was set forth in the brief as: "The trial court erred by

7

different than the original assignment of error." *Id.* at 302.  More recently, in *Escamilla*, we addressed the merits of the appeal "[b]ecause the re-sequencing of the language appearing in Escamilla's second assignment of error [was] non-substantive, in that it [did] not permit him to argue different issues in [the] appeal, it [was] not defaulted."[5]  290 Va. at 379 n.4.

We have also held that "[t]he improper modification of an assignment of error, however, will not prevent the appellant from arguing and having his appeal considered on the issue actually asserted in the trial court and for which an appeal was granted, provided that he has adequately briefed that issue." *White*, 267 Va. at 103.  Under these circumstances, we will "limit our consideration in [the] appeal to the narrow issue raised in [the] initial assignment of error, disregarding any argument on and expressing no opinion with respect to the additional issue interjected by the improper modification of that assignment of error in the opening brief." *Id.* We took this approach in *White*, where the original assignment of error was limited "to the question whether the evidence was sufficient to prove that [White] was 'in police custody at the time of his flight.'" *Id.* at 102.  We refused to address the modification to the assignment of error contained in White's brief where he "include[d] language asserting that his conviction was barred because he was not in 'custody *on a charge or conviction of a felony*.'" *Id.* (emphasis in original).

---

making no finding whether the Appellants established a right of way by necessity or implication." *Id.*

[5] "[I]n his petition for appeal, Escamilla stated the second assignment of error as follows: 'The Circuit Court erred when it granted the Superintendent's motion to dismiss for lack of jurisdiction and ruled Escamilla's petition was not timely.'" *Escamilla*, 290 Va. at 379 n.4.  "In his opening brief, however, the second assignment of error is stated in a different sequence: 'The Circuit Court erred when it ruled Escamilla's petition was not timely and granted the Superintendent's motion to dismiss for lack of jurisdiction.'" *Id.*

8

We likewise considered the original wording of an assignment of error in *Santen* and did not address an added phrase to the assignment of error on brief, noting that "an appellant may not change the wording of an assignment of error." 265 Va. at 497 n.4. In that case, Santen changed the original assignment of error and added an entire phrase that raised an issue that was not encompassed by the original assignment of error.[6] Similarly, in *Hamilton Development Co.*, we addressed the original assignment of error due to the "metamorphosis of [the] assignment [that] enabled defendant to argue" an issue that was never raised at trial.[7] 248 Va. at 44.

In contrast to these cases, however, the Court refused to consider an assignment of error on appeal in *Cardinal Holding*. We held the appellants "to the assignment of error as written" which stated that "[t]he trial court erred in awarding any sanctions to the *Jarretts* when more than 21 days elapsed after entry of the final order." *Cardinal Holding Co.*, 258 Va. at 629. The appellants "maintained that the reference in the assignment of error to the Jarretts instead of to Deal was a typographic error." *Id.* The Court refused to allow appellants' to change "the

---

[6] The granted assignment of error from Santen's petition for appeal read: "The Trial Court Erred in Excluding the Testimony of Richard McGarry, Plaintiff's Specially Retained Expert, who was to Testify Regarding the Reliability of the Alcosensor used to Determine Wilfong's Blood Alcohol Content, and was to Testify how Defendant Glenn Wilfong's Elevated Blood Alcohol Content Affected his Ability to Control his Actions, and his Ability to Accurately Recollect the Events of that Night." *Santen*, 265 Va. at 497 n.4. On brief, Santen "added a phrase that McGarry would testify 'about the accuracy of the Preliminary Breath Test Device and how much Vodka, Ingested Five Hours Earlier, would be Required to Result in a Blood Alcohol Content of 0.209 Grams Per Liter of Breath in a person the Weight and Gender of Wilfong.'" *Id.*

[7] Hamilton Development "set forth in the petition for appeal and as recited in our mandate awarding the appeal," the assignment of error as: "The Circuit Court erred in allowing evidence of Hamilton's financial condition for the year after the alleged tresspass [sic] occurred." *Hamilton Dev. Co.*, 248 Va. at 43. On brief, the assignment of error was changed to read: "The Circuit Court erred in allowing evidence of Hamilton's financial condition for the year after the alleged tresspass [sic] occurred to be presented before the jury found Hamilton liable." *Id.* at 44.

9

Jarretts" to "Deal" and held that "because [the granted assignment of error] fail[ed] to relate the jurisdictional question to the sanctions awarded to Deal, we will not consider the question." *Id.*

In summary, while the Court continues to strongly discourage *any* alteration of granted assignments of error, the Court has exercised its discretion to address the merits of cases where the alteration appears substantive but "issues pertaining to appellant's omitted assignments of error are encompassed by the presented assignments of error and are sufficiently briefed." *Northam*, 285 Va. at 434 n.*.

Finally, when there are substantive changes and the appellant has not adequately briefed the granted issue(s), the matter will be deemed defaulted. *Black*, 248 Va. at 57 ("The assignment of error does not sufficiently reach the issue argued, and we will not address it further.").

In this case, Henderson made extensive changes to the wording and organization of the assignments of error. The original assignments of error within the petition for appeal encompass the following issues: (1) acceptance by the circuit court of a direct submittal of the final accountings, (2) delegation to the Commissioner of Accounts the power to enter a final approval of the accountings, and (3) failure to follow statutory procedure thus denying the beneficiaries their due process right to challenge the fiduciary's billings. On brief, Henderson took the first assignment of error from the petition and parsed it into two different assignments of error. These reworded assignments of error argue that the circuit court erred (1) by accepting a direct submittal of the fiduciary's final accountings and, (2) by delegating to the Commissioner the right to enter a final approval of the accountings. The original second and third assignments of error are combined in the third assignment of error on brief, which argues that the circuit court erred by failing to require that the Trustee submit her final accountings in accordance with the statutory review procedures because it deprived the residuary beneficiaries of their due process

10

rights to examine and challenge the legal and administrative fees sought by the fiduciary. We will assume without deciding, that the changes are substantive.

Accordingly, we will revert to the original assignments of error granted in the petition for appeal as they are adequately addressed on brief. However, we need only address the second assignment of error as "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (citation omitted).

## B. Commissioner of Accounts

Henderson's original Assignment of Error 2 asserted that the "circuit court erred by adopting a procedure for the review and approval of the [final] accountings which deprived the beneficiaries . . . of any meaningful opportunity and due process to review and challenge the fiduciary's billings set forth in said accountings." In response, the Trustee argued that the Commissioner considered and rejected the objections to the final accountings. The Trustee also argued, in the alternative, that any error was harmless because the procedure used by the circuit court was an effort in judicial economy because the circuit court tried to conclude the "lengthy and adversarial proceeding" without having to bring in a new judge.

To resolve this issue, we must look to the statutory provisions governing the procedures for the approval of final accountings submitted by a trustee and conservator for an estate to a Commissioner of Accounts and a circuit court. "[A]n issue of statutory interpretation is a pure question of law which we review de novo." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007).

> When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a

> manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

*Id.* (citations omitted). Additionally, "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." *Meeks v. Commonwealth*, 274 Va. 798, 802 (2007) (citation and internal quotation marks omitted).

The Commissioner of Accounts is an office established to support the circuit court and aid in "the settlement of fiduciaries' accounts and the distribution of estates." *Gray v. Binder*, 294 Va. 268, 276 (2017). It has evolved from the Commissioner in Chancery, and is "one of the most important known in the administration of justice," however, "commissioners serve to assist the court, not to supplant it." *Id.* (quotations and citations omitted). "[F]rom the very necessity of their appointment and the nature of their office, their work is subject to the review of the court. It may accept or reject it, in whole or in part, as its judgment, upon such review, may dictate, whether it be of law or fact." *Gray*, 294 Va. at 276-77 (citation omitted) (alteration in original).

The General Assembly enacted Code § 64.2-1200 *et seq.*, to govern Commissioners in Virginia. The Trustee has an obligation to "account before the Commissioner of Accounts." Code § 64.2-1206. Henderson, as a beneficiary, has the right to object, or note "exceptions," to the Commissioner. Code § 64.2-1209. Once objections are filed, "the circuit court, after 15 days from the time the report has been filed in its office, shall examine such exceptions that have been timely filed . . . [and] shall certify in the order that it has made a personal examination of the exceptions." Code § 64.2-1212(B). The plain language of Code § 64.2-1212(B) demonstrates that the General Assembly intended that the order of proceedings begin with the Commissioner and end with the circuit court.

The opposite occurred in this case. The December 29 order conditioned the circuit court's final approval of the accountings on the Commissioner's approval, "subject to specific written objections." Nothing in the record shows any ruling on Henderson's objections and exceptions. None of the orders contain the language required by Code § 64.2-1212(B) that the circuit court certified "that it has made a personal examination of the exceptions." As stated in the December 29 order, when the Commissioner filed his final approval on March 20, 2018, the circuit court's December 29 order then became final as an approval of the final accountings. In so ordering, the circuit court erroneously delegated final approval of the accountings to the Commissioner without a certification "that it ha[d] made a personal examination of the exceptions." Code § 64.2-1212(B).

For these reasons, we hold that the circuit court erred in delegating its final approval as provided by statute and directing that the Commissioner conduct that approval of the final accountings. While the circuit court's reasons for doing so may have been expedient under the facts of this case, we cannot agree with Cook that the error was harmless.

III. CONCLUSION

The best and narrowest ground for deciding this case is our conclusion that the circuit court erroneously delegated its approval of the final accounts to the Commissioner without a certification "that it ha[d] made a personal examination of the exceptions." Code § 64.2-1212(B). We will reverse the judgment of the circuit court and remand for proceedings consistent with this opinion.

*Reversed and remanded*.

13